LEMON WILLIE v. THE STATE.

No. 12973. Delivered January 29, 1930.
Rehearing denied March 12, 1930.
Reported in 25 S. W. (2d) 862.

The opinion states the case.

*H. N. Nelson* of Carthage, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is burglary; penalty, confinement in the penitentiary for a period of two years.

The statement of facts was filed after the expiration of time allowed by the trial court, and the authority of this court to consider the statement is open to question. However, from our examination of it, we make the following observations:

The indictment charged the burglary of a building owned by Mrs. K. W. Holt. She was a widow. The name of her husband was K. W. Holt. On cross-examination, it was shown that her Christian name was Lucy, or L. C. Holt. The claim that there was a variance is not deemed meritorious.

Appellant was a negro and had worked upon the premises of Mrs. Holt and on the adjoining farm for several years. He traded at the store owned by Mrs. Holt, which was burglarized on the 22nd day of April. Upon discovering the burglary, according to her testimony, she made an examination to ascertain whether there were any

tracks or footprints identifying the criminal. She observed tracks around the window through which the store had been entered and also tracks leading away from the store. From her testimony we quote:

"I was acquainted with the defendant's track at that time, as he had one heel off and one heel on his shoes; and he was kind of pigeon-toed; and I would have known his track anywhere I would have found it. His track lead from the window of the store that had been broken open out to where we found some horse tracks, or as far as we were able to track them. Some lard and flour was taken out of the store and we got some of it back."

Another witness, Vaughan, a son-in-law of Mrs. Holt, testified that he made an examination for footprints while in company with the sheriff and other persons whom he named. He testified that he was sufficiently well acquainted with the tracks of the defendant so that he could swear to them. He further testified:

"One of the tracks at the window had one of the shoe heels off and Lemon's shoe heel was off when he was arrested. I was sufficiently well acquainted with this defendant's tracks to swear to them. One of the tracks that lead from that window was the tracks of this defendant. . . . I had observed his tracks ever since he had been around there, and he worked for me and I knew his tracks. . . . There was something peculiar about his track other than the heel being off of one of the shoes, but I do not know exactly what it was and cannot explain. You know how you can tell a track if you are acquainted with it."

There was but one track leading from the window to the fence. There was flour strewn along the tracks where they appeared after they were over the fence. These tracks and the evidence of the flour were followed some 200 yards along the road to a place where a horse and mule had been hitched. The parties making the examination went to a pile of sawdust where there had been a saw-mill and there observed upon the ground an indication that a sack of flour had been set on the ground. Rain had fallen and the pile of sawdust gave no evidence of disturbance, but searching in it the witnesses found the can of lard and two sacks of flour which were identified as the stolen property. From the pile of sawdust, tracks were followed to a place where a mule and horse had been hitched, and the tracks of these were followed some 200 yards from the road, and from there to the home of the appellant's father, where the appellant also lived. The horse and mule belonged to the appellant's father.

A bill of exception was presented to the testimony of the officers who were with the witness Vaughan. In the bill it is stated that the testimony given by the officers was an opinion. The bill shows that inquiry was made whether the tracks on the ground corresponded with the shoes which the appellant wore at the time of his arrest. The objection urged was that the opinion was called for. The witness testified that he did not measure the tracks or place the shoes in the tracks, but was permitted to testify that the tracks *"looked like"* they had been made by a shoe which the appellant wore at the time of his arrest.

The appellant testified and denied the presence at the time and place of the commission of the offense. He claimed that he had at one time a shoe with one of the heels off, but that was sometime before the transaction, and that on the shoes which he wore at the time of his arrest there were heels.

Before stating that the tracks on the ground looked like they had been made by the shoes, the witness detailed peculiarities on the ground which corresponded with shoes. See the following cases: Crumes v. State, 28 Tex. Cr. App. 516; Goldsmith v. State, 32 Tex. Cr. R. 112; Thompson v. State, 19 Tex. Cr. App. 593; Clark v. State, 29 Tex. Cr. App. 437; McLain v. State, 30 Tex. Cr. App. 482; Mueller v. State, 85 Tex. Cr. R. 346.

One of the officers testified:

"The only thing that I know of as peculiar about the tracks that we started from the window on was that there was a heel off of one shoe and that was the main thing we went by. In fact, they called my attention to that when I got there and we tracked it on out. . . . I observed the shoes Lemon had on when I got to where he was, and the heel was off of one of those shoes. · The shoes he had on, as I now recall them, in the condition I then found them in, suited the tracks that I had tracked away from that store window. . . . I did not take this defendant back and put his foot in the tracks at the window. . . . I said the shoes he had on resembled the tracks, but I did not go back by there. . . . The main thing I went on was by the heel being off."

If the admissibility of the testimony of the officers was doubtful, it would not be regarded as of such materiality as to authorize a reversal of the judgment for the reason that two witnesses testified to their familiarity with the footprints made by the appellant as to amount to knowledge. At least, such was their testimony. One of them testified that recognizing and knowing the appellant's tracks

from such familiarity mentioned, he traced them in the manner above set forth. With him at the time were the officers who afterwards arrested the accused and found him wearing at the time shoes which, according to their testimony, made tracks that looked like those found by the burglarized premises.

The only question of real importance that presents itself to our mind is the sufficiency of the circumstances to identify the appellant as one of the offenders. The identity of his tracks with that of the offender, proved in the manner above stated and proved to have been traced from the burglarized premises to the place where the horse and mule had been stopped, were afterwards traced from the place where the stolen goods were found to a place where the horse and mule had been hitched, and the tracks of the horse and mule having been traced from the point mentioned to the home of the appellant, are deemed such as to have authorized the jury to conclude, beyond a reasonable doubt, that in placing the stolen property in the pile of sawdust, the appellant was one of the actors, and that the property stolen was carried from the burglarized premises by the appellant and a companion to the pile of sawdust. It is believed that the testimony mentioned is such as to establish the identity of the offender as one of the possessors of the stolen property and to exclude every reasonable hypothesis arising from the evidence other than his guilt. So believing, and regarding none of the bills of exception as presenting reversible error, the opinion is expressed that the court is not authorized to order a reversal of the judgment, even if the statement of facts was in a condition to be duly considered.

The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant again insists that because the indictment alleged the ownership of the burglarized house in Mrs. K. W. Holt, and later referred to the property in the house as belonging to said "Mr." K. W. Holt, that this was a matter of material repugnance for which the indictment should be quashed. We can not agree with such contention. Not only was the house described as the property of Mrs. K. W. Holt, but it was stated in the indictment that the property therein belonged to Mrs. K. W. Holt, and the later reference was to "the said Mr. K. W. Holt" and was plainly a clerical error. If the words "Mr. K. W. Holt" were entirely eliminated, the use of the word "said" in that connection would be a sufficient description.

The bill of exception complaining of the question asked Mrs. Holt as to whether her name was Mrs. K. W. Holt, is qualified by the trial judge with the statement that no objection was made to the question. This court will not stop to determine whether a question asked be leading or otherwise when no objection is made to it because of its form.

There are many objections set out in the motion for new trial, to matters which can not be thus raised for the first time. We have no doubt as to the sufficiency of the evidence. A number of witnesses who testified positively that they knew appellant's tracks, gave testimony to finding said tracks under the window of the burglarized building the next morning, also to following said tracks to the saw-dust pile where part of the property taken from the burlarized house was found and near which were horse tracks, which latter led from the saw-dust pile to the home of appellant's father. Appellant's wife was put on the stand who testified to an alibi, and the State, after laying a proper predicate, proved that the wife had told other parties that on the night of the alleged burglary her husband was away from home and did not get back until two o'clock. The evidence seems amply sufficient.

The motion for rehearing will be overruled.

*Overruled.*