### J. K. Freeman v. The State.

#### No. 6777.    Decided April 5, 1922.

**1.—Murder—Continuance—Impeachment—Want of Diligence.**

Where the absent testimony was for impeachment purposes, and the diligence was insufficient, the court correctly overruled the application for continuance.

**2.—Same—Evidence—Imputing Crime to Another—Rules Stated.**

Testimony showing that deceased had had trouble with other parties would not be admissible, in the absence of some fact reasonably indicating the connection on the part of said other person with the homicide herein.

**3.—Same—Evidence—Res Gestae—Declarations of Deceased—Rules Stated.**

Where, upon trial of murder, the wife of the deceased got to him within about three minutes after the shooting and was told by her husband that the old man did it, there was no error in allowing her to testify that her husband usually called the defendant the "old man."

4.—Same—Evidence—Res Gestae—Question and Answer.

Where the witness testified substantially to the same statement made by the wife of the deceased about the same time, the testimony was *res gestae* and admissible, and this would not be altered because the witness asked the deceased who did it.

5.—Same—Evidence—Tracks—Measurement—Opinion of Witness.

Where, upon trial of murder, the testimony as to a certain peculiarity in the tracks as well as the measurement thereof, and that in the opinion of the witness the same was made by the defendant was admissible. Following Mueller v. State, 85 Texas Crim. Rep., 346.

6.—Same—Evidence—Practice in Trial Court—Condition of Defendant.

That a doctor was not allowed to testify to the present mental and physical condition of the defendant, which testimony was offered to show that he was not mentally or physically able to undergo the ordeal of a trial, presents nothing for consideration by this court, under the record of this case.

7.—Same—Argument of Counsel—Condition of Defendant.

Where it appeared that during the trial defendant was brought into the courtroom upon a cot and lay upon a cot in the courtroom during the progress of the trial, the district attorney should not have stated to the jury that the only way the defendant could escape punishment was by lying on the cot.

8.—Same—Evidence—Rebuttal—Res Gestae—Mental Condition of Deceased.

Where defendant introduced in his behalf a physician of experience. who saw deceased a little time after the shooting, and gave evidence of a very strong character in support of the proposition that the wound inflicted upon deceased was of such nature as to render him incapable of making connected, coherent, or intelligent statements concerning the shooting, there was no error in permitting the State to show that about thirty minutes after the shooting, and also within an hour afterwards, deceased stated to different parties that the defendant had shot him; that he saw him but had no chance to do anything, such statements being *res gestae* and also reflected the mental condition of deceased. Following McGee v. State, 31 Texas Crim. Rep., 74, and other cases.

9.—Same—Res Gestae—Rule Stated—Test—Spontaneity of Statement.

The spontaneity of the statement or matter offered in evidence, under the *res gestae* rule, is the test, and this may be arrived at by consideration of the surrounding circumstances and the condition of the maker of such statements during the time which has elapsed since the occurrence or injury, and this is not limited to any specific time. Following Toony v. State, 8 Texas Crim. App., 459, and other cases.

10.—Same—Evidence—Contradicting Witness—Rule Stated—Statement of Deceased.

When an attack is made upon the truth of statements made by the deceased after the infliction of a fatal injury, upon the ground that such injury was of a character as to render it impossible for the injured person to know or understand what he was saying, it is permissible for the State to

prove intelligent and apparently connected statements made by the deceased during said time.

### 11.—Same—Alibi—Charge of Court—Requested Charge.

Where, upon trial of murder, the evidence raised the issue of alibi, which the trial court declined to submit, although requested to do so by a special charge, the same was reversible error.

### 12.—Same—Circumstantial Evidence—Charge of Court.

Where, upon trial of murder, there was direct evidence relating to the homicide, there was no error in a failure to charge on circumstantial evidence.

Appeal from the District Court of Hopkins.   Tried below before the Honorable Geo. B. Hall.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Dial, Melson, Davidson & Brim,* for appellant.—On question of continuance: Taylor v. State, 164 S. W. Rep., 844, Harris v. State, 172 id., 1146.

On question of alibi: Anderson v. State, 31 S. W. Rep., 673; Wilson v. State, 51 id., 916; Soria v. State, 203 id., 67.

On question of argument of counsel: Jupe v. State, 217 S. W. Rep., 1041; Thomas v. State, 204 id., 999.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Hopkins County of murder, and his punishment fixed at ten years in the penitentiary.

A continuance to obtain the testimony of one York was properly refused. Sufficient reason for this conclusion appears when we state that the testimony of said witness related solely to the impeachment of a witness for the State. No citation of authorities is needed to support a conclusion so well settled as the above. We might add that the diligence to secure the attendance of the witness was insufficient.

Testimony showing that deceased had had trouble with other parties, would not be admissible, in the absence of some fact reasonably indicating a connection on the part of said other persons with the homicide herein.

Mrs. Grayson, wife of deceased, heard the shooting and ran to where her wounded husband was. She said it could not have been over three minutes before she got there. What deceased then said to her would be res gestae. Among other things contained in said statement was one to the effect that "the old man done it." There was no error

in allowing Mrs. Grayson to testify that her husband usually called appellant "the old man."

Mr. Woods got to the scene of the shooting within fifteen minutes. thereafter. No error appears in allowing him as well as Mrs. Grayson to testify that deceased made substantially the same statement to Mr. Woods as that made to Mrs. Grayson when she first came. The statement made to Mr. Woods was unquestionably res gestae, and this fact would not be altered because Mr. Woods asked deceased who did it.

Mr. Titus measured the tracks leading away from the scene of the shooting and along the route supposed to have been taken by the man who fired the fatal shot. He testified to a certain peculiarity in the track as well as to his measurement of said track. He also testified that he compared and measured a track made by appellant and that in his opinion the track made by appellant and those seen by him near the place of the homicide were identical. This was permissible. Mueller v. State, 85 Texas Crim. Rep., 346; 215 S. W. Rep. 93.

That a doctor was not allowed to testify to the present mental and physical condition of the accused, which testimony was offered to show that he was not mentally or physically able to undergo the ordeal of a trial, would not seem to present anything for our consideration. The accused was an old man, and the case had been continued once on his application for substantially the same reasons as would be detailed by the doctor, and upon a certificate of said doctor. The refusal of the application for a continuance on account of the physicial and mental condition of appellant was also made the subject of a bill of exceptions. The statements concerning appellant's physical and mental condition as set forth in said application for continuance, made same appear to be chronic and without apparent expectation of alleviation or relief. Appellant was between seventy-nine and eighty years of age, and, as stated, the case had been continued once on account of his condition, and the trial court qualifies the bill of exceptions by saying that there appeared no reason to believe that appellant could ever be tried if the case was postponed or continued on account of his physical condition. We do not think the overruling of said application any abuse of the discretion of the trial court in the matter.

Various witnesses testified to appellant's strength and his seeming activity for a man of his age, but in view of the rejection of the testimony of the physician as to his present physical condition, we are of opinion that the district attorney should not have stated to the jury that the only way appellant could escape punishment was by lying on a cot. It appears from the record that during the trial appellant was brought into the courtroom on a cot and lay on one in the courtroom during the progress of the trial.

Appellant introduced in his behalf a physician of experience who saw deceased a little time after the shooting and gave evidence of a

very strong character in support of the proposition that the wound inflicted upon deceased was of such nature as to render him incapable of making connected, coherent or intelligent statements concerning the shooting. Evidence was introduced by the State showing that about thirty minutes after said shooting, and also about an hour afterward, deceased stated to different parties about the same things that he said to his wife, that is, that old man Freeman shot him, and that he saw him but had no chance to do anything. By various bills of exception appellant objected to the introduction of these statements of deceased. We have carefully considered each of said bills but are of opinion that said statements were admissible as part of the res gestae, and also as reflecting the mental condition of deceased after the shot struck him. There is no exact time limit which can be applied to cases wherein the rule of res gestae is applied. McGee v. State, 31 Texas Crim. Rep. 74; Bronson v. State, 59 Texas Crim. Rep. 17; Christian v. State, 71 Texas Crim. Rep. 566; 161 S. W. Rep. 101. The spontaneity of the statement or matter offered in evidence under said res gestae rule, is the test, and this may be arrived at by consideration of the surrounding circumstances and the condition of the maker of such statements during the time which has elapsed since the occurrence or injury. Many authorities hold that when a condition of suffering exists from the infliction of the injury to the making of the statement, so that in a given case it might extend far enough to preclude premeditation, and in cases of this kind we have declined to be limited to any specific time. Tooney v. State, 8 Texas Crim. App. 459; Stagner v. State, 9 Texas Crim. App. 441; Fulcher v. State, 28 Texas Crim. App. 471; Lewis v. State, 29 Texas Crim. App. 201; Castillo v. State, 31 Texas Crim. Rep. 145; Moon v. State, 31 Texas Crim. Rep. 236; King v. State, 34 Texas Crim. Rep. 237; Freeman v. State, 40 Texas Crim. Rep. 545; Chapman v. State, 43 Texas Crim. Rep. 328. Reference to these cases will disclose that statements made at times varying from twenty minutes to a longer period than an hour and a half, were admitted as res gestae under appropriate surroundings.

We further think that when an attack is made upon the truthfulness of statements made by the deceased after the infliction of a fatal injury, upon the ground that such injury was of a character as to render it impossible for the injured person to know or understand what he was saying, it would be permissible for the State to prove intelligent and apparently connected statements made by the deceased during said time. It would be as if a witness were contradicted as to statements made by him touching the matter under investigation, and the party introducing him was permitted to support his testimony by prior similar utterances. In this case the State proved declarations made by the deceased a few minutes after he was shot to the effect that appellant was the party who shot him. As contradicting such statements appellant introduced the testimony of the

physician above mentioned. As reflecting the rational condition of deceased, we think a statement by him made to a friend some time after he was shot to the effect that he wanted him to get a doctor for him as quickly as possible, would be admissible.

Appellant excepted to the court's failure to charge on alibi, and asked a special charge presenting said issue, which was refused. Just why the trial court declined to submit this issue is not clear to us. Appellant testified detailing his movements during the morning of the homicide and swore that after being out in the field with his grandson and getting some melons and eating one of them at his house, that he took his gun and walked straight south through the field to Mr. Jones' residence and was at the Jones' residence when he heard of the shooting. That he did not do the shooting and knew nothing about it. Mrs. Jones testified that appellant came to her house from the north on the morning of the killing between 9:30 and 10 o'clock and left going toward his son, Ace Freeman's home, which was further south from her residence. The trial court may have concluded that the State's testimony overwhelmingly showed the presence of the appellant at the place of the shooting, and that the testimony in support of alibi was not of sufficient weight or strength to call for a charge thereon, but the authorities in this State are uniform and numerous to the effect that when called for by the evidence, if a charge on alibi is refused and such refusal excepted to, and especially when a special charge presenting the issue is also refused, the matter will constitute error such as to necessitate a reversal. Branch in his Ann. P. C., p. 29, and Vernon in his C. C. P., pp. 434-435, cite many authorities in support of this proposition.

We do not think there was error in failing to charge on circumstantial evidence in view of the testimony of the son of deceased that when the shot was fired he looked at once and saw appellant at the place from which the shot came; and the further fact that a number of statements of deceased appear in the record in which he says that appellant shot him.

For the refusal of the trial court to submit the issue of alibi, this court feels compelled to order a reversal, which is accordingly done.

*Reversed and remanded.*